UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| RYAN KEITH GAY,<br><br>**Plaintiff,**<br><br>v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>**Defendant.** | CIVIL ACTION NO. 6:19-269-KKC<br><br><br>**OPINION AND ORDER** |

*** *** ***

This matter is before the Court on the parties' cross-motions for summary judgment. (DE 13, 15, 20.)  Plaintiff, Ryan Keith Gay, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the denial of his claim for disability insurance benefits and supplemental security income.  The Court, having reviewed the record, will deny Plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's decision.

**I. Analysis**

This Court's review of the decision by the Administrative Law Judge ("ALJ") is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  To determine whether a claimant has a compensable disability under the Social Security Act (the "Act"), the ALJ applies a five-step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 n.6 (6th Cir. 2016) (describing the five-step evaluation process).  The five steps are:

> *Step 1:* If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> *Step 2:* If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> *Step 3:* If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> *Step 4:* If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> *Step 5:* If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers*, 582 F.3d at 652)).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4). In the first four steps of the process, the claimant bears the burden of proof. *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (citation and quotation marks omitted); *see also* 20 C.F.R. § 404.1520(g)(1).

In denying Gay's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Act. 20 C.F.R. § 404.1520(a); *see, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that Gay has not engaged in substantial gainful activity since March 1, 2017. (Administrative Record ("AR") at 14.)

At step two, the ALJ determined that Gay suffered from the severe impairments of neck disorders, bilateral shoulder disorders, a back disorder, a history of post-traumatic stress disorder ("PTSD"), anxiety, and depression. (AR at 15.)

At step three, the ALJ found that Gay does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR at 15.)

Before proceeding to step four, the ALJ determined that Gay has the residual functional capacity ("RFC") to perform a range of "light" work that includes:

- Lifting and carrying twenty pounds occasionally and ten pounds frequently
- Standing and walking for six hours
- Sitting for six hours in an eight-hour workday
- Frequently climbing ramps and stairs
- Occasionally climbing ladders, ropes, and scaffolds
- Frequently performing stooping, kneeling, crouching, and crawling
- Performing frequent right overhead reaching

(AR at 16.)

As for restrictions for "mental issues," the ALJ determined that Gay could:

- Understand, remember, and carry out simple instructions
- Occasionally understand, remember, and carry out detailed instructions
- Perform work with no intrusive supervision
- Interact with the general public on an intermittent basis
- Adapt to changes if gradual, infrequent, and not basic in scope
- Perform work with no stringent time targets and no stringent production quotas

(AR at 16.)

At step four, the ALJ determined that Gay is unable to perform any past relevant work. (AR at 19.)

At step five, the ALJ determined that, considering the RFC described above and Gay's age, education, and work experience, there are jobs that exist in significant numbers in the national economy that Gay can perform, and thus, he is not disabled. (AR at 19-20.)

The ALJ's decision became the final decision of the Commissioner when the Appeals Council subsequently denied Gay's request for review. *See* 20 C.F.R. § 422.210(a). Gay therefore has exhausted his administrative remedies and filed a timely appeal in this Court. The parties have filed cross-motions for summary judgment, and this case is now ripe for review under 42 U.S.C. § 405(g).

**A.  The ALJ Did Not Err in Failing to Find that Gay's Impairment Met or Equaled a Listed Impairment**

Gay first argues that, during step three of the disability analysis, the ALJ erred in failing to find that he has an impairment or combination of impairments that met or equaled the severity of a listed impairment. (DE 13 at 6-9.) While Gay appears to assert that he meets the criteria for Listings 1.00, 12.02, 12.04, and 12.15, he does not develop his arguments for Listings 1.00, 12.02, and 12.04. Rather, he only superficially references the listings. "[I]ssues which are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (citation and quotation marks omitted). Therefore, his arguments regarding those listings are waived. *See id.* (concluding that the plaintiff's argument that she met a specific listing was waived when she "failed to provide any explanation as to why" she fulfilled that listing's criteria). Accordingly, the Court will only address Gay's arguments regarding Listing 12.15, which relates to Gay's PTSD.

To meet the criteria of Listing 12.15, a claimant must establish that he meets the qualifications under 12.15(A) and 12.15(B) or in the alternative, 12.15(A) and 12.15(C). 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.15. Gay does not appear to contest that he does not meet the requirements under 12.15(B); rather, he challenges the ALJ's finding that Gay did not satisfy the criteria under 12.15(C). (DE 13 at 6-9.) Specifically, Gay disputes the ALJ's finding that "[t]he record fails to present evidence of a 'serious and persistent' disorder which

4

has resulted or is expected to result in merely *'marginal' adjustment* despite ongoing medical treatment, mental health therapy, psychosocial supports, or highly structured settings." (DE 13 at 6 (emphasis added); AR at 16.)

Under 12.15(C), the claimant's mental disorder must be "serious and persistent," meaning that the claimant has a "medically documented history of the existence of the disorder over a period of at least 2 years." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.15(C). The claimant must also provide evidence of both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [his] mental disorder []; **and**
>
> 2. Marginal adjustment, that is, [he has] minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life[.]

*Id.* (emphasis added). A claimant provides evidence of "marginal adjustment" when he shows that his "adaptation to the requirements of daily life is fragile." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(G)(2)(c). A claimant only demonstrates marginal adjustment when "changes or increased demands have led to exacerbation of [his] symptoms and signs and to deterioration in his functioning[.]" *Id.* The requisite deterioration may include a significant change in medication, hospitalization, or prolonged absence from work that makes it difficult for the claimant to sustain work activity over time. *See id.*

Gay points to only two categories of medical evidence in support of his argument that he meets the paragraph C criteria because of his PTSD: evidence that Gay previously considered suicide and evidence of Gay's history of PTSD. Gay maintains that the ALJ omitted evidence that he contemplated suicide, referencing evidence of his previous suicide attempts and suicidal ideation. (DE 13 at 6-7; AR at 942, 949.) However, the ALJ indeed considered this evidence and reasonably discounted it. (AR at 17-18.) During the same examination in which Gay expressed a history of suicide attempts and suicidal ideation, the

5

ALJ explained that the psychologist concluded that Gay had no neurocognitive disorders. (AR at 17, 952.) The ALJ also noted that a more recent examination found no suicidal ideation. (AR at 17, 695.) Because Gay's suicidal thoughts in October 2018 were a result of his divorce and the divorce's impact on his relationship with his daughter, the ALJ properly found that his history of suicidal ideation "coincided with the mere situational stress" caused by the aftermath of his divorce. (AR at 18, 1296, 1298.)

Gay also claims that the ALJ's decision "could not have been based on the entire medical evidence presented" because his history of PTSD demonstrates that his medical history comports with paragraph C's requirements. (*See* DE 13 at 8-9.) Gay outlines the history of his PTSD and related symptoms, including his PTSD diagnosis (AR at 942-43), his reactions to reminders of trauma (AR at 946), his mild flashbacks (AR at 949), and his periodic strong negative feelings (AR at 950). (DE 13 at 8-9.) This evidence merely describes the symptoms of his PTSD, which the ALJ does not dispute that Gay experiences. (AR at 15.) However, this is not evidence of any marginal adjustment because such evidence does not bear on Gay's capacity to adapt to changes in his environment or to demands outside of his daily life. Gay fails to submit any additional evidence demonstrating marginal adjustment.

The ALJ's conclusion that the record failed to establish a serious and persistent disorder resulting in marginal adjustment is otherwise supported by substantial evidence. As the ALJ's decision noted, state agency psychologists found that Gay's mental impairments only resulted in moderate limitations. (AR at 15, 101, 121.) Further, the ALJ pointed out that Gay had consistently negative mental status examinations, finding that Gay had normal neurological and psychiatric profiles. (AR at 15, 546, 877, 882.) The ALJ also considered Gay's highly independent lifestyle and ability to perform daily activities, such as personal hygiene, driving, cooking, cleaning, and managing money with the assistance of family

members and friends. (AR at 15, 18, 1141, 1149.) The ALJ repeatedly referenced the findings in Gay's mental status examinations that Gay did not exhibit any limitations to his attention and concentration. (AR at 18, 1149-50, 1185.) Additionally, the ALJ noted that, consistent with the findings of state agency psychologists, Gay did not meet the criteria under Listing 12.15. (AR at 15, 95, 115.) Accordingly, the ALJ properly concluded that the record did not sufficiently show evidence of marginal adjustment.

**B.      The ALJ Did Not Err in Discounting Certain Symptoms-Related Testimony**

Next, Gay argues that the ALJ erred in discounting his symptoms testimony in assessing his claims. The ALJ, however, properly rejected Gay's individual testimony and allegations as lacking persuasiveness. (*See* AR at 15, 18.) As the ALJ noted, Gay testified at his hearing that he had not performed any work since the alleged disability onset date of March 1, 2017. (AR at 15, 35.) However, as the ALJ pointed out, this directly conflicts with Gay's statements to healthcare providers in May 2017 that he was working as a mechanic at a local garage. (AR at 15, 1207, 1216.)

Further, Gay described significant limitations because of his impairments in his testimony at his hearing and in the disability forms that he submitted to the Social Security Administration, but the ALJ reasonably found that Gay's assertions were inconsistent with the remainder of the record. (AR at 18.) Gay's own statements are, in themselves, contradictory. Gay testified that he experiences "continuous" radiating pain in his back and neck, rating this pain as a seven on a scale from zero to ten. (AR at 36-39.) However, in a consultative exam, Gay stated that he had no pain that radiated from his back and neck. (AR at 1140.) Gay testified that he engaged in the home remedy of "working out," which he stated involved "walking." (AR at 44.) Gay later negates himself, testifying that he cannot comfortably walk. (AR at 45-46.) He further testified that he could not comfortably sit, but the ALJ emphasized that Gay later conceded that he could sit for fifteen to twenty minutes.

7

(AR at 18, 51.) Even though Gay later admitted that he could perform household chores for ten to fifteen minutes at a time, Gay previously testified at the same hearing and in his disability forms that he could not perform such chores. (AR at 49-50, 52, 294, 311.)

As the ALJ explained, the documentary record also contradicted Gay's testimony and statements. (AR at 18.) While Gay testified that he could only stand still for ten minutes at a time and could not sit comfortably (AR at 45-46), a consultative examination concluded that Gay had the ability to sit and stand (AR at 1143). Despite Gay's testimony that he could not comfortably lift a gallon of liquid, squat, bend at the waist, or climb a flight of stairs, physical examinations found that Gay had no muscle atrophy and no reduction in shoulder strength. (AR at 47, 741, 754, 764, 787, 820.) Gay stated in his disability forms that he could hardly move from his pain, but medical examinations revealed stenosis changes, facet arthritic changes, and degenerative disc disease that were merely mild in nature. (AR at 292, 1325, 1387-88.) Indeed, a subsequent MRI found only moderate right-sided stenosis at one lumbar vertebra, mild to moderate right foraminal stenosis at another, and "mild narrowing" in the neural foramen at multiple levels. (AR at 1315, 1382.) In contrast to Gay's testimony (AR at 49-50) and statements in his disability forms (AR at 294, 311), Gay stated in September 2017 during a consultative exam that he could perform his own personal hygiene and other chores like cooking, cleaning, and short distance driving. (AR at 1141.) While Gay stated during his hearing that he had trouble with concentration (AR at 52), the ALJ noted that this is contrary to any other objective medical findings in the record. (*See* AR at 18, 1141, 1149-50, 1185.) Further, as the ALJ highlights, Gay testified that he had crying spells, but he denied having crying spells during an examination in September 2018. (AR at 18, 53, 1323.)

Thus, the ALJ reasonably found that Gay's impairments did not create limitations to the degree that Gay alleged in his testimony and in his disability forms. Accordingly, the ALJ reasonably discounted Gay's own statements in assessing Gay's disability status.

8

Gay also claims that Dr. Leigh Ann Ford's report is "uncontradicted substantive evidence" that supports a finding of disability. (DE 13 at 9.) However, the ALJ reasonably concluded that Dr. Ford's report was just that—contradicted. (AR at 18-19.) In her report, Dr. Ford determined that Gay had "marked" limitations in his ability to tolerate the stress and pressure of employment and "moderate to marked" limitations in his capacity to appropriately respond to supervision and pressure in the workplace. (AR at 1150.) But the ALJ noted that Dr. Ford's conclusion was disproportionate to her other findings. (AR at 19.) Dr. Ford otherwise found that Gay's intelligence, memory capacity, attention and concentration were normal. (AR at 1149.) Dr. Ford likewise found that Gay had a logical organization of thought and demonstrated adequate judgment. (AR at 1150.) The ALJ reasonably maintained that Dr. Ford's conclusion was also inconsistent with other documentary evidence. (AR at 18-19.) For example, a mental status examination found that Gay had organized thought processes, self-awareness, normal judgment, and good attention and concentration. (AR at 1185.) Due to the discrepancies within Dr. Ford's own report and between her report and other evidence in the record, the ALJ reasonably afforded little weight to Dr. Ford's opinion in ultimately finding that Gay was not disabled. (AR at 19.)

**C.    The ALJ Did Not Err by Relying upon a Vocational Expert**

Finally, Gay seemingly disputes the findings of the vocational expert who the ALJ relied upon in determining whether a significant number of jobs exists in the economy that would accommodate Gay's RFC because the hypothetical questions posed to her were "based solely on one state expert's opinion." (DE 13 at 11.) This is a mischaracterization. While the ALJ relied upon an examination by a state agency psychologist in posing hypothetical questions to the vocational expert, he also adapted the questions based upon Gay's very own testimony. (AR at 61-62.) As long as "the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments," "[a]

9

vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). Gay does not explicitly challenge the accuracy of the impairments set forth in the ALJ's hypothetical questions, and the Court cannot otherwise identify any inaccuracies in the ALJ's description of Gay's impairments. Therefore, the ALJ properly relied upon the vocational expert's testimony in step five of the disability analysis. To the extent that Gay argues that the ALJ should have included findings from Dr. Ford in the hypothetical questions, the ALJ properly afforded little weight to Dr. Ford's findings for the reasons given above.

For all these reasons, the Court **HEREBY ORDERS** that:

1. The plaintiff's motion for summary judgment (DE 13, 15) is DENIED;

2. The defendant's motion for summary judgment (DE 20) is GRANTED;

3. The decision of the Commissioner is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment will be entered contemporaneously with this order.

Dated March 26, 2021

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY